# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

————————————

Nº 08--CV--4653 (JFB)

————————————

HEWLETT BREWSTER,

Petitioner,

VERSUS

PEOPLE OF THE STATE OF NEW YORK,

Respondent.

————————————

**MEMORANDUM AND ORDER**
January 6, 2010

————————————

JOSEPH F. BIANCO, District Judge:

Hewlett Brewster (hereinafter "petitioner") petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in the County Court of Nassau County, State of New York.[1]  Petitioner was convicted of burglary in the third degree after a jury trial and was sentenced to three-and-one-half to seven years in prison, to be served consecutively with the term of imprisonment from an unrelated Suffolk County conviction.

In the instant habeas petition, petitioner challenges his conviction, claiming his constitutional rights were violated because (1) the trial court erred in denying petitioner's motion to suppress samples of his blood and saliva taken by the police,[2] (2) the conviction

---

[1] The State of New York is not properly named as a respondent in this action.  Because, according to the docket sheet, petitioner is currently incarcerated at the Clinton Correctional Facility, the correct respondent is the Superintendent of the Clinton Correctional Facility.  *See* 28 U.S.C. § 2243.  In the interest of judicial efficiency, the Court will construe the petition as naming the Superintendent of the Clinton Correctional Facility as the respondent in light of petitioner's *pro se* status, the fact that respondent has not raised this issue, and the fact that no prejudice to respondent will result.

[2] As discussed *infra*, petitioner raises this argument as two separate grounds: that the consent was not voluntary, and that petitioner was incapable of

was against the weight of the evidence, and (3) the sentence was both excessive and vindictive.

For the reasons discussed below, petitioner's application for a writ of habeas corpus is denied in its entirety.

## I. BACKGROUND

The Court has adduced the following facts from the instant petition and underlying record.

### A. Facts

On July 16, 2002, at around 3:00 a.m., security personnel and Nassau County police rushed to Veeco Instruments, an electronics store in Woodbury, New York, (hereinafter "Veeco") after motion detectors within the store set off the burglar alarm. (T.(2) at 133.)[3] By the time officials made it to the scene, four laptop computers had been taken from the premises and the store was in disarray. (T.(2) at 135, 151.) The burglar also had apparently cut himself while entering the store through a broken window, and left bloodstains within the premises. (T.(2) at 224-27, 231.)

Nassau County police met with petitioner on August 11, 2002. (T.(2) at 75.) At the time, petitioner was in the custody of Suffolk County Police. (T.(1) at 5-6.) That day, while being questioned by police, petitioner consented to give blood and saliva samples. (T.(2) at 76-

---

consent because of mental disease or defect.

[3] The entire trial court record is compiled in three volumes: Transcript of pre-trial Hearing, December 13, 2004 (hereinafter "T.(1)"); Transcript of Trial, January 5, 2005 (hereinafter "T.(2)"); and Transcript of Sentencing, April 1, 2005 (hereinafter "T.(3)").

78.) When the deoxyribonucleic acid ("DNA") results of the blood and saliva samples came back from the lab, the investigators learned that the petitioner's DNA matched the DNA found at the Woodbury crime scene. (T.(2) at 311-12.) The government's expert witness testified that there was only a one in greater than six billion chance that the blood found inside the Veeco office was from someone other than petitioner. (T.(2) at 294, 317.)

On February 7, 2003, the Nassau County police arrested petitioner for the Veeco burglary based on the results of the DNA test. Petitioner was advised of his *Miranda* rights, and questioned once again about the Veeco burglary. (T.(2) at 176-83.) During questioning, petitioner admitted to the police that he would "continue to do that kind of stuff." (T.(2) at 184.)

### B. Procedural History

#### 1. Pre-trial Hearing

The Nassau County Court held a pre-trial hearing on petitioner's motion to suppress the following: (1) petitioner's custodial statements; and (2) petitioner's blood and saliva samples. The following evidence was presented at that hearing.

On August 11, 2002, while the investigators questioned petitioner, two forms were read aloud to petitioner regarding his consent to the police taking photographs, fingerprints, blood, and hair samples. (T.(1) at 9, 25, 31.) Petitioner read the forms and confirmed that he understood the documents. (T.(1) at 28.) After the consent forms were signed by petitioner, the samples were taken, including the blood, which was taken from an open cut on petitioner's hand. (T.(1) at 8, 20-21.) In addition, police asked if they could

take a styrofoam cup from which petitioner was drinking and petitioner consented. (T.(1) at 19-20.) At all times petitioner was calm and cooperative, and at no point did he revoke his consent for the samples. (T.(1) at 10.)

Petitioner was arrested on February 7, 2003 and was taken to the Second Squad police station in Nassau County. Petitioner was informed that his DNA matched blood found within Veeco Instruments and was read his *Miranda* rights. (T.(1) at 38-40, 49.) Petitioner stated that he understood his rights and indicated such by writing the word yes on the "rights card" given to him by an investigator. (T.(1) at 40, 52.) The investigators then questioned petitioner about the Veeco burglary and he stated that he would "continue to do this kind of stuff, because I have nowhere to go and no money." (T.(1) at 41-42.) The investigators denied using any force in relation to any statements petitioner made and they testified that at no time did he request an attorney. (T.(1) at 43.)

The trial court denied petitioner's motion to suppress. The court found that the saliva sample was freely given and was "voluntarily proffered" (T.(1) at 87) and the blood sample was also "freely given." (*Id.*) Moreover the trial court determined that petitioner's *Miranda* rights were properly administered and that his statements were voluntary. (*Id.*)

During the hearing, petitioner's attorney stated on the record that he believed that, considering the evidence, his client should take a plea agreement offered by the prosecutor. (T.(1) at 2.) Defense counsel again expressed the same sentiment after the judge's ruling at the hearing. (T.(1) at 90.) The trial court judge then spoke directly to petitioner informing him of his choices with regard to the plea offer. (T.(1) at 91.) Petitioner indicated

that he believed that the judge was going to put him into jail anyway, and the trial court judge answered: "You do not know what I am going to do. I have told you what I will do if you resolve this matter. It is in your interests." (*Id.*) Petitioner declined to accept the offer and again proclaimed his innocence. (T.(1) at 91-92.)

### 2. Trial and Appeal

Petitioner's trial commenced on January 5, 2005. (T.(2) at 2.) After a five-day trial, on January 11, 2005, the jury returned a verdict of guilty on the charge of burglary in the third degree. (T.(2) at 419.) On April 1, 2005, the trial court judge sentenced petitioner to an indeterminate sentence of three-and-one-half to seven years to run consecutively with another term already being served for an unrelated conviction in Suffolk County.[4] (T.(3) at 4.)

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. Petitioner argued that: (1) he was deprived of the right to effective assistance of counsel because of various failures in his trial counsel's performance; (2) the trial court erred in denying petitioner's motion to suppress the blood and saliva samples; (3) the jury's verdict was against the weight of the evidence; and (4) his sentence was harsh and excessive and was imposed in retaliation for exercising his right to a trial. The Appellate Division affirmed the judgment of conviction, rejecting each of petitioner's arguments. *People v. Brewster*, 852 N.Y.S.2d 312 (App. Div. 2008). Petitioner then applied for leave to appeal to the New York Court of Appeals, raising only his claims regarding assistance of counsel, suppression of the blood

---

[4] The unrelated conviction is the subject of a separate petition for habeas relief (*see* No. 08-cv-4480).

and saliva samples, and his sentence. The Court of Appeals denied petitioner's application. *People v. Brewster*, 10 N.Y.3d 860 (2008). Petitioner then sought review of his conviction by the United States Supreme Court, which denied certiorari. *Brewster v. New York*, 129 S. Ct. 265 (2008).

Petitioner filed the instant habeas corpus petition on November 13, 2008. This Court issued an order to show cause on November 19, 2008, and respondent submitted its opposition on March 3, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

28 U.S.C. § 2554(d). "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

In particular, AEDPA establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

As discussed below, petitioner's claim that the trial court erred in failing to suppress his blood and saliva samples is procedurally barred from review. In any event, as discussed below, the Court has examined all of petitioner's claims on the merits and concludes that all of his claims fail.

### A. Procedurally Barred Claims

Petitioner argues that the trial court erred in not suppressing the blood and saliva samples taken from him by the police because (1) his consent was not voluntary as it was a product of coercion and deception, and (2) he lacked the capacity to consent due to mental disease or defect. As set forth below, petitioner's claim is procedurally barred from federal habeas review.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). In the Second Circuit, a federal court on habeas review may only review petitioner's Fourth Amendment violation claim if "(a) the state has

provided no corrective procedures at all to redress the alleged Fourth Amendment violations or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Mejias v. Allard*, No. 03 Civ. 5195 (NGG) (LB), 2006 WL 119033, at *20 (E.D.N.Y. Jan. 13, 2006) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). The Second Circuit has approved New York's procedure for litigating Fourth Amendment claims, embodied in New York Criminal Procedure Law § 710, as facially adequate. *See Capellan*, 975 F.2d at 70 n.1.

The Nassau County Court ruled, after a pre-trial hearing, that petitioner voluntarily gave consent for the blood and saliva samples. (T.(1) at 87.) Petitioner appealed this ruling, and the Appellate Division affirmed the lower court's decision. *People v. Brewster*, 852 N.Y.S.2d at 313. Thus, having had an opportunity for full and fair litigation of this issue under New York law, petitioner may not raise the claim again on federal habeas review. Moreover, petitioner did not specifically raise his mental disease or defect argument in state court and raises it for the first time in the instant petition. However, "[t]he focus of this standard is the word 'opportunity,' and *Gates* means only that the state must make available 'a statutory mechanism' for suppression of evidence tainted by an unlawful search or seizure." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (citing *Gates v. Henderson*, 568 F.2d 830, 837 (2d Cir. 1977)). Therefore, even though petitioner did not raise his mental capacity to consent at the available New York corrective proceeding, he still had a full and fair opportunity to litigate such a claim. Therefore, the Court is barred from reviewing petitioner's entire claim regarding the blood and saliva samples. In any

event, as discussed below, petitioner's claim is without merit.

## B. Review on the Merits

For the reasons discussed below, the Court finds all of petitioner's claims to be without merit.[5]

### 1. Suppression of the Blood and Saliva Samples

Petitioner argues that the blood and saliva samples should have been suppressed because (1) his consent was a product of coercion and deception, and (2) he lacked the capacity to consent due to mental disease or defect.

---

[5] On December 21, 2009, petitioner submitted a letter to the Court arguing that his conviction "ran afoul" of the Constitution in light of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). Petitioner argues that there was no forensic scientist that testified at his trial on "the type of mechanism used to authenticate fungible evidence." To the extent petitioner seeks to amend his petition to add this claim, the claim is without merit. In *Melendez-Diaz*, the United States Supreme Court held that a criminal defendant had a Sixth Amendment right to "be confronted with" at trial the analysts who had identified certain evidence as cocaine; "certificates of analysis" from the analysts, who did not appear at trial, were insufficient. *Id.* at 2531. First, any new rule articulated in *Melendez-Diaz* would not apply retroactively. *See, e.g.*, *Louder v. Coleman*, No. 09-1124, 2009 WL 4893193, at *5 (W.D. Pa. Dec. 10, 2009). Moreover, despite petitioner's allegations to the contrary, the record is clear that the government presented live testimony at petitioner's trial from a police forensic scientist (T.(2) at 249-88) and from a forensic department employee at the private company to which police sent the DNA samples for analysis (T.(2) 289-330). Thus, petitioner has failed to show a Sixth Amendment violation under *Melendez-Diaz*.

Searches and subsequent seizures of bodily fluids, such as blood and saliva, are subject to typical Fourth Amendment analysis. *See Schmerber v. California*, 384 U.S. 757 (1966); *Skinner v. Ry. Labor Executives' Labor Ass'n*, 489 U.S. 602 (1989). Furthermore, a warrantless search is permissible if a subject voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). "[A] search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity." *Id.* at 228; *see also Mack v. United States*, 814 F.2d 124-25 (2d Cir. 1987) (rejecting argument that Fourth Amendment was violated where defendant consented to the taking of urine sample). In determining whether consent is voluntary the Court's primary focus is on whether "the consent [was] 'the product of an essentially free and unconstrained choice by [the] maker.'" *See United States v. Bye*, 919 F.2d 6, 9 (2d Cir. 1990) (citing *United States v. Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988)). Courts must examine the totality of the circumstances to determine whether the consent was voluntary. *Id.*; *see also United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *United States v. Ramirez-Cifuentes*, 682 F.2d 337, 344 (2d Cir. 1982). The test is an objective one. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The government has the burden to prove—by a preponderance of the evidence—that consent was voluntarily given. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). Some pertinent factors relating to the determination of voluntariness are as follows:

(1) whether the alleged consent was given when the defendant was in police custody, including such considerations as the number of officers present and the extent to which they physically restrained the defendant; (2) the personal background of the consenter, including his age and prior experience with law enforcement authorities; (3) whether the consenter offered resistance or assistance to the police; and finally (4) whether the police advised the subject of his right to refuse consent.

*Kissling v. Barabash*, No. 82 Civ. 6220 (PKL), 1985 WL 6088, at * 5 (S.D.N.Y. Dec. 17, 1985) (citation omitted). "The consent to a search by one who realizes that the jig is up and a search warrant will issue in any event is similar to a plea of guilty by one who believes that he will be convicted if he stands trial . . . . His act does not become involuntary simply because the consequences would have been the same if he refused." *United States v. Lace*, 669 F.2d 46, 52–53 (2d Cir. 1982). Consent is still considered voluntary even if a party does not realize the incriminating nature of allowing the search. *See United States v. Vickers*, 387 F.2d 703, 707 (4th Cir. 1967) ("Intelligent consent does not mean that with hindsight the acquiescence must be deemed wise . . . . Intelligent decisions are sometimes wrong decisions."). "[T]he question is not whether the respondent acted in her ultimate self-interest, but whether she acted voluntarily." *Mendenhall*, 446 U.S. at 559 (1980) (citation omitted). In addition, the individual need not be advised of his right to refuse consent. *United States v. Garcia*, 56 F.3d 418, 422-23 (2d Cir. 1995).

Both the Nassau County Court and the Appellate Division considered on the merits the admissibility of the blood and saliva samples, and so AEDPA deference applies. The County Court found that petitioner had voluntarily given the samples to police and, in any event, had no expectation of privacy in the styrofoam cup from which his saliva was collected. (T.(1) at 86-87.) The Appellate Division ruled that there was "no basis to disturb the hearing court's finding that the defendant voluntarily consented to give the police saliva and blood samples." *Brewster*, 852 N.Y.S.2d at 313.

Petitioner argues that the consent he gave was not voluntary because it was given in a "deceptive environment" and "non voluntary circumstances." (Petition at 7.) Specifically, petitioner argues that he consented to the samples while handcuffed at a police station and while being questioned by several officers of the Nassau and Suffolk police. The fact that petitioner was in custody at the time his consent was given is not enough to preclude a finding of voluntariness. *See United States v. Ansaldi*, 372 F.3d 118, 129 (2d Cir. 2004) ("The fact that police drew their guns to effectuate the arrest does not necessarily establish coercion, neither does the fact that [the defendant] was handcuffed."); *accord United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986). In addition, there is nothing in the record indicating that the state courts unreasonably concluded that the samples were taken with petitioner's "free and unrestricted" consent. *Bustamonte*, 412 U.S. at 225 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). When prompted for the blood sample, petitioner freely agreed to allow a swab to be taken from an open cut on his hand. (T.(1) at 21.) In addition, petitioner freely gave the styrofoam cup to the investigators when they asked "if that was o.k." (T.(1) at 19.) Therefore, this Court concludes that the state

court's ruling was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing, and that petitioner's claim is therefore without merit.

The Court also rejects petitioner's claim that he was incapable of giving consent due to a mental disease or defect. As a threshold matter, the relevant question is not whether petitioner in fact suffered from a mental disease or defect at the time he consented to the search. Instead, the question is an objective one – whether the totality of the circumstances indicated that the consent was voluntary or involuntary. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect." (citation omitted)); *United States v. Grap*, 403 F.3d 439, 444-45 (7th Cir. 2005) ("The purpose of suppression of evidence obtained in an unreasonable search is to deter violations by officers of the Fourth Amendment. Obviously, they cannot be deterred by circumstances that are unknown to them, like the psychiatric history of the person consenting to a search."); *see also Colorado v. Connelly*, 479 U.S. 157, 161, 167-71 (1986) (holding that there must be a finding of police coercion to render a confession not voluntary even where there was evidence that defendant had schizophrenia at the time of confession). There is nothing in the record to suggest that petitioner was not lucid and cooperative while dealing with police. Nor were there signs in the record that petitioner was suffering from delusional symptoms or any other serious impairment that would indicate to a reasonable officer that the consent was not voluntary. There is evidence in the

record that petitioner answered questions when asked, read documents and forms, and cooperated with the taking of the samples. (*See* T.(1) at 10, 26, 28.) In short, there is nothing in the record to indicate that the state court's ruling that the blood and saliva samples were admissible was contrary to or an unreasonable application of federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing. Therefore, the Court rejects this claim on the merits.[6]

---

[6] On July 13, 2009, petitioner submitted to the Court purported psychiatric records from 2007 and 2008, which state, *inter alia*, that petitioner has schizophrenia and a history of "auditory hallucinations." (Central New York Psychiatric Center, Outpatient Treatment Plan (hereinafter "Treatment Plan"), at 2.) The Treatment Plan also states that petitioner's "evaluation indicates substance abuse prior to the instant offense." (*Id.*) To the extent petitioner argues that these medical reports are newly discovered evidence, the Court rejects such an argument. Newly discovered evidence is, by definition, incapable of discovery though counsel's due diligence before or during trial. Evidence in existence, though perhaps unknown to petitioner, cannot later be described as newly discovered. *See, e.g.*, *Hector v. Greiner*, No. 99-CV-7863, 2000 U.S. Dist. LEXIS 12679, at *5 (E.D.N.Y. Aug. 29, 2000); *see also United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000) ("Relevant factors to a successful motion [based on newly discovered evidence] are whether . . . counsel could not have discovered the evidence with due diligence before or during trial."). Petitioner admits that he was held in a psychiatric hospital several times in the late 1980s. (Petition at 9.) Petitioner also admits that he was "a medical outpatient through the 1990s up until the interrogation." (*Id.*) Therefore, the Court rejects any argument that this evidence is newly discovered. In any event, nothing in these medical reports indicates that petitioner was incapable of voluntarily consenting to blood and saliva samples in August 2002 and, more importantly, nothing in

## 2. Weight of the Evidence

Petitioner also argues that his conviction was against the weight of the evidence. Specifically, petitioner contends that the evidence at trial "established that the defendant did not enter the building with intent to commit a crime . . . ." (Petition at 11.) A "weight of the evidence" claim is based on state law. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). To the extent petitioner raises this claim, the Court cannot review it.[7]

In an abundance of caution, however, the Court will construe the petition as raising a federal claim that the evidence was insufficient to support the conviction, which does present a question of federal law. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that the Fourteenth Amendment requires "sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law") (citing *Jackson v.*

---

these reports bears on the totality of the circumstances known to police at the time petitioner consented to the taking of the samples.

[7] The state court rejected petitioner's weight of the evidence claim on the merits. On direct appeal, the Appellate Division held that "[u]pon the exercise of our factual review power . . . we are satisfied that the verdict of guilt was not against the weight of the evidence." *Brewster*, 852 N.Y.S.2d at 313 (internal citation omitted).

*Virginia*, 443 U.S. 307, 318-19 (1979)). In any event, as discussed below, any claim that the evidence at petitioner's trial was insufficient to support a finding of guilt beyond a reasonable doubt is without merit.

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler*, 109 F.3d at 840. As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04-CV-0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66

(2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In the instant case, petitioner was convicted of burglary in the third degree under New York Penal Law § 140.20, which provides: "A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." *Id.* Petitioner argues that the evidence at trial established that "the defendant did not enter the building with the intent to commit a crime . . . ." (Petition at 11). The Court concludes that petitioner has not met his "very heavy burden" on this claim. *See Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). It is clear that the prosecution put forth sufficient evidence from which a jury could reasonably find, and did find, that petitioner was guilty of burglary in the third degree beyond a reasonable doubt. At trial, the prosecution put forth: (1) photographs and testimony regarding four laptop computers that were taken from the office; (2) DNA evidence taken from blood and saliva samples of

petitioner that matched blood stains found at the scene; and (3) petitioner's incriminating statement upon being asked about the burglary in question that: "It does not matter what I did because I am better off in jail. I just was going to continue to do that stuff because I have nowhere to go and no money." (T.(1) at 41-42.) Therefore, to the extent petitioner raises a sufficiency of the evidence claim, such claim is denied on the merits.

3. Excessive and Vindictive Sentence Claim

Petitioner also claims that his sentence is harsh and excessive and was imposed in retaliation for his decision to go to trial. As set forth below, the Court disagrees and finds no basis for habeas relief in connection with petitioner's sentence.

Petitioner raised his excessive sentence claim on direct appeal on the grounds that since he was an indigent homeless person, who had never physically harmed anyone, and was due to serve time in a contemporaneous conviction his sentence should have been below the maximum. (Appellant's Brief on Appeal, at 53.) The claim was raised on both state and federal grounds. The Appellate Division rejected this claim on the merits, *Brewster*, 852 N.Y.S.2d at 313 ("The court providently exercised its discretion in imposing the maximum sentence."), and so AEDPA deference applies.

As a threshold matter, to the extent that petitioner relies on state law as a grounds for an excessive sentence claim, such a claim is not cognizable on habeas review. *See, e.g.*, *Wilson v. Ercole*, No. 06-cv-553 (DLI), 2009 U.S. Dist. LEXIS 23447, at *30-*31 (E.D.N.Y. Mar. 23, 2009) ("On his direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead

urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. The Appellate Division declined, stating that the 'sentence imposed was not excessive.' Petitioner now re-asserts this identical claim. Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d).") (internal citations omitted).

To the extent petitioner raises a federal claim that his sentence was cruel and unusual punishment under the Eighth Amendment, the Court rejects such an argument. For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 U.S. Dist. LEXIS 6990, at *11-*12 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review." (citation omitted)); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989). In this case, petitioner was sentenced as a second felony offender to three-and-one-half to seven years in prison to be served consecutively with the terms of two unrelated convictions in Suffolk County. Such a sentence is within the range prescribed by New York law. *See* N.Y. Penal Law §§ 70.06, 70.25, 140.20. As petitioner's sentence is within the statutorily prescribed range, it raises no constitutional concerns.

Petitioner also argues that the trial court punished him for exercising his Sixth Amendment right to a jury trial. Specifically, petitioner argued in state court that his sentence was the result of his not accepting the plea offer, which the prosecution, defense counsel, and the trial court judge all demonstrated they preferred. (Appellant's Brief on Appeal, at 56). Furthermore, petitioner contends that the lack of reasoning given by the trial court judge for imposing the maximum sentence demonstrates this intent to punish. (Appellant's Brief on Appeal, at 57 (citing T.(3) 3-4).)

The Sixth Amendment guarantees the right to a trial by jury, and a state may not penalize a person for exercising a right guaranteed under the Constitution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, plea bargains, which often require a defendant to choose between going to trial and pleading guilty in order to receive a reduced sentence, are an important and constitutional part of the criminal justice system. *See Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978) ("[T]here is no per se rule against encouraging guilty pleas."). "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *Bonner v. Smith*, No. 05-CV-4209 (JG), 2006 U.S. Dist. LEXIS 6925, at *25-26 (E.D.N.Y. Feb. 24, 2006) (quoting *McMann v. Richardson*, 397 U.S. 759, 769 (1970)). Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not always forbid requiring him to choose. *See Brady v. United States*, 397 U.S. 742, 750 (1970); *see also Bonner*, 2006 U.S. Dist. LEXIS 6925, at *25-26 (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)).

The mere fact that the trial court, following conviction, imposed a higher sentence than the plea offer does not, in and of itself, establish actual vindictiveness. *See Naranjo v. Filion*, No. 02 Civ. 5449(WHP)(AJP), 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003) (citing *Corbitt*, 439 U.S. at 219, 223). The judge also never stated or implied that petitioner's sentence was based on his failure to accept the prosecutor's plea offer. The trial court judge simply explained petitioner's situation and the options that were available. *See Naranjo*, 2003 WL 1900867, at *10 (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence was based on refusal of plea offer); *see also Archie v. Strack*, 378 F. Supp. 2d 195, 200-01 (W.D.N.Y. 2005) (rejecting habeas claim of defendant who turned down a plea bargain offer of four and one-half to nine years and received a sentence of ten to twenty years). Furthermore, "lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial." *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976) (internal quotation and citation omitted); *see also Pabon v. Hake*, 763 F. Supp. 1189, 1194-95 (E.D.N.Y. 1991) (holding that petitioner was not vindictively sentenced when only evidence of vindictive sentencing that petitioner presented was that the sentence he received was greater than promised sentence he rejected as part of plea bargain); *Bonner*, 2006 U.S. Dist. LEXIS 6925, at *25-26 (holding that the imposition of a seventy-five year sentence when defendant was offered plea bargain of seven years did not establish a violation of defendant's Sixth Amendment right to trial by jury).

The trial judge's comments also do not indicate that the state courts unreasonably concluded that the sentencing was not vindictive. The judge did not threaten petitioner with a more severe sentence if he elected to go to trial, which would "establish a per se violation of the defendant's Sixth Amendment right to a trial . . . ." *Fielding v. Lefevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) (citations omitted). Instead, the judge merely indicated, after a pre-trial hearing in which the judge denied petitioner's motion to suppress DNA evidence, that pleading guilty was in petitioner's interest. Such a statement, even when it is later followed by a more severe sentence than the plea offer, does not establish vindictive sentencing. There is no constitutional violation where a judge offers leniency if a defendant agrees to plead guilty or states that a defendant may face a more severe sentence if he is convicted after trial. *See Fielding*, 548 F.2d at 1106; *see also Gaines v. Murray*, No. 03-CV-016A, 2008 WL 4890249, at *5 (W.D.N.Y. Nov. 12, 2008) ("[A] judge's statements strongly implying that sentencing will be harsher should the defendant present his case at trial are not necessarily coercive." (collecting cases)); *Flowers v. Irvine*, No. 94-cv-2240, 1995 WL 669913, at *4 (E.D.N.Y. Oct. 31, 1995) (rejecting habeas petitioner's Sixth Amendment argument where trial judge stated: "Before this trial goes any further, is there no possibility of a disposition? I think your client is making a dreadful mistake.") ("In this case, the . . . statement was on its face intended to convey to [petitioner] that a disposition would be in his interest. There was no threat, either explicit or implicit.") Indeed, the judge also stated: "You don't know what I am going to do. I have told you what I will do if you resolve this matter." (T.(1) at 91.) At the actual sentencing, the judge noted that petitioner had been convicted and had subsequently failed to cooperate with the

probation department. (T.(3) at 3-4.) The fact that the judge did not show leniency to petitioner, who did not admit guilt, does not establish a constitutional violation. *See Araujo*, 539 F.2d at 292; *see also Lewis v. McGinnis*, No. 9:04-CV-32, 2008 WL 833964, at*24 (N.D.N.Y. Mar. 27, 2008) ("The fact that the court, following conviction, imposed the maximum sentence does not, in itself, demonstrate actual vindictiveness." (collecting cases)). Thus, petitioner has failed to show that the state court's sentencing decision was contrary to or involved an unreasonable application of federal law, and petitioner's claim regarding his sentence is rejected on the merits.

In sum, having carefully examined the merits of all of petitioner's claims, the Court concludes that petitioner has failed to demonstrate that any state court ruling was contrary to, or an unreasonable application of, clearly established federal law, or that any state court decision was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In short, the Court has determined that none of petitioner's claims have merit.

## IV. CONCLUSION

For the reasons discussed above, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 6, 2010
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Kathleen M. Rice, District Attorney of Nassau County, by Tammy J. Smiley and Jason R. Richards, Assistant District Attorneys, 262 Old Country Road, Mineola, New York, 11501.